SOUTHWESTERN BELL TELEPHONE COMPANY, a corporation, Plaintiff-Appellant,

v.

Cecil C. ROUSSIN, et al., Exceptions of R. Lemoyn Hensley and Helen Hensley, his wife, Defendants-Respondents.

No. 36480.

Missouri Court of Appeals, St. Louis District, Division Three.

Feb. 3, 1976.

Motion for Rehearing or Transfer Denied March 10, 1976.

Dearing, Richeson, Roberts & Wegmann, J. Richard Roberts, Hillsboro, for plaintiff-appellant.

Earl R. Blackwell, Hillsboro, for defendants-respondents.

McMILLIAN, Justice.

Plaintiff, Southwestern Bell Telephone, appeals from a judgment entered on a jury verdict, awarding defendants $8,775.00 damages for the taking of an easement across defendants' land for the purpose of installing an underground communications systems. We affirm.

Plaintiff petitioned the court on July 11, 1968, requesting a right-of-way and easement to construct, operate, maintain, inspect and remove an underground communications system consisting of underground cables, wires, conduits, surface testing terminals, markers and other necessary appurtenances, under a strip of land one rod in width, across defendants' property. As provided by the applicable Supreme Court

Rules,[1] defendants, upon filing of the commissioner's report, filed written exceptions and prayed that the issue of damages be submitted to a jury.

Plaintiff filed a pretrial motion for specific performance of a settlement agreement alleging that the parties had come to an oral agreement on the issue of damages in December of 1972, but that defendants later refused to honor the agreement. Plaintiff adduced evidence of the following facts: (1) the respective attorneys had conducted oral negotiations in mid-December, 1972; (2) Mr. Richeson (attorney for plaintiff) had made an offer of $500.00 over and above the commissioner's award of $500.00; (3) Mr. Blackwell (attorney for defendants) had telephoned Mr. Richeson on December 15, 1972, to inform him that defendants had accepted the offer; (4) in reliance thereon plaintiff paid the agreed sum into the circuit court registry, advising the clerk that the case had been settled; (5) Mr. Richeson sent a withdrawal of exceptions to Mr. Blackwell for execution by defendants; and (6) on January 13, 1972, Mr. Richeson received a letter from Mr. Blackwell advising him that defendants refused to accept the settlement. In response, defendants submitted an affidavit executed by Mr. Blackwell stating that he did not have authority to accept the settlement offer on the occasion in question. The trial court overruled plaintiff's motion and the case proceeded to trial.

At trial, defendants presented two expert witnesses to testify to the amount of damages sustained as a result of the taking by plaintiff.

These witnesses testified that the highest and best use for defendants' property was either industrial or residential development and accordingly set the amount of damages at $7,875.00 and $13,500.00. Defendant, R. Lemoyn Hensley, testified that he estimated damages to be $15,750.00. Expert witnesses on behalf of plaintiff testified that farming was the highest and best use of defendants' property and estimated damages to be $250.00 to $300.00, $300.00 to $400.00, and $200.00

The jury returned a verdict for $8,775.00. The trial court entered judgment for defendants in accordance with the verdict together with costs. Plaintiff thereupon filed a motion to compel settlement agreed upon or in the alternative motion for new trial. Both motions were overruled after defense counsel testified and was cross-examined and again denied that he had authority to settle the case.

■ First, plaintiff argues that since the record reveals that an authorized offer was made by plaintiff's attorney to defendants' attorney to settle the case for the sum of $1,000 to be paid to defendants by Bell and since defendants' attorney indicated on December 15, 1972, in response to this offer that "[y]ou [plaintiff's attorney] can call the clerk and pass it [the case] for settlement," that there was a valid and binding settlement reached between the two parties to this action which the trial court should have enforced upon plaintiff's motion. As plaintiff points out in its brief, the general rule is that a valid settlement agreement may be enforced by the courts. *Wenneker v. Frager*, 448 S.W.2d 932 (Mo.App.1969); 15A C.J.S. Compromise and Settlement § 48; 15 Am.Jur.2d, Compromise and Settlement, § 25. The case cited deals with a settlement reached in open court; however, valid contracts of compromise and settlement or release[2] reached prior to trial are equally enforceable. *Stahly Cartage Co. v. State Farm Mut. Ins. Co.*, 475 S.W.2d 438, 441 (Mo.App.1971).

■ The law in Missouri does not clearly establish a precise method for enforcing settlement agreements; but *Wenneker v. Frager*, supra, at 936, states that the exist-

---

1. Rules 86.01 et seq.

2. A release has been held to be the same as a contract of compromise and settlement.

*Stahly Cartage Co. v. State Farm Mut. Ins. Co.*, 475 S.W.2d 438 (Mo.App.1971).

ence of a settlement agreement reached in court during the trial of the cause settled may be raised by motion. Plaintiff in the present case sought enforcement of a settlement by raising the question first in a pretrial motion. This appears to have been the proper method of seeking enforcement of the agreement under the circumstances of the instant case. There is authority which indicates that a settlement or release is an affirmative defense, *Jenkins v. Simmons*, 472 S.W.2d 417, 420[1] (Mo.1971), and that as such it must be raised by pleading. Rules 55.08 and 55.27 and *Wechsler v. Davis*, 209 Mo.App. 570, 239 S.W. 554, 557[7] (1922). This rule, however, would not seem applicable in the present case owing to the posture of the condemnation proceeding involved. In the present case the settlement came after all required pleadings had been filed and thus there was no required responsive pleading in which plaintiff could have raised the settlement question. Under these circumstances Rule 55.27, by implication, permits the defense of settlement to be raised by motion. Since the settlement in question came after the condemnation proceeding was commenced and all required pleadings had been filed by the parties, the rule of *Wenneker*, supra, which permits the settlement of a case which is in progress to be enforced upon a motion, applies here.

■ The next question is whether the settlement agreement relied on by plaintiff in the present case is valid and enforceable. If the agreement is enforceable, then the trial court erred in overruling plaintiff's two motions seeking enforcement, one of which was filed before the trial of defendant's exception and the other of which was filed after the trial in conjunction with plaintiff's motion for a new trial. The issue presented in these motions is whether defendants' attorney had authority to reach a settlement with plaintiff. There is no dispute that he represented that he had such authority and that he did reach an agreement with plaintiff's counsel to settle. This fact is admitted by defendants' counsel. Under these circumstances it was incumbent upon defendants to prove to the trial court that their attorney lacked authority to settle the case, since his act of settling with plaintiff is presumed prima facie to be authorized. *Kahn v. Brunswick-Balke-Collender Co.*, 156 S.W.2d 40, 43[9] (Mo.App. 1941). See also 30 A.L.R.2d 953–954.

■ Assuming that plaintiff made a prima facie case, the question then becomes whether the uncorroborated testimony of defendants' attorney that he did not have authority to settle the case is sufficient to overcome the presumption of authority. Under Missouri law, the attorney-client relationship is an agency relationship governed by the same rules which apply to other agencies. *Qualls v. Field Enterprises Ed. Corp.*, 302 F.Supp. 152 (D.Mo.1969); *State ex rel. AMT v. Weinstein*, 411 S.W.2d 267 (Mo.App.1967). While it is the general rule that neither the fact nor scope of agency can be established by the extrajudicial statements, declarations or admissions of the alleged agent, this rule does not extend to the sworn testimony of an alleged agent. Case law recognizes that an agent may testify both as to the fact and as to the nature and extent of his authority, where it rests in parol. *Fielder v. Production Credit Asso.*, 429 S.W.2d 307[1] (Mo.App.1968); 3 Am.Jur.2d, Agency, §§ 353, 354; I Mechem, Agency, §§ 285, 291 (2d Ed. 1914).

This general rule has been specifically applied to questions of authority arising out of the attorney-client relationship. II Mechem, Agency, §§ 2154, 2155 (2d Ed. 1914). The early case of *Anderson v. McPike*, 86 Mo. 293, 301 (Mo.1885) is closely analogous to the question at issue here. In this case the plaintiff sought to use the original answer of the defendant, signed by an attorney, as evidence against him. The attorney, whose name was signed to the answer, testified that the defendant had not employed him in the cause. The Supreme Court ruled that his testimony was sufficient to overcome the presumption of authority arising from his name being signed as the defendant's attorney and prevent the admission of the answer as evidence.

Plaintiff's evidence in connection with both motions to enforce the settlement tended only to show what has been admitted by defendant's counsel, that is, that defendants' counsel represented that he had authority to settle the case and did, in fact, reach a settlement agreement with plaintiff's counsel. Defendants' evidence on the first motion consisted of the affidavit[3] of their attorney and his sworn statement that he had no authority to settle. At the hearing on plaintiff's second (post-trial) motion to enforce the settlement, defense counsel testified to the same facts which he had set before the court on the previous motion and he was then cross-examined by plaintiff's counsel. Plaintiff offered no evidence on either of these motions, other than the statements and actions of defense counsel, tending to show that defense counsel had authority from his clients to settle the case.

■ Under the present circumstances the trial court acted correctly in overruling plaintiff's motions to enforce the settlement agreement made by defense counsel. An attorney's apparent authority is limited to matters of procedure or remedy and does not extend to the subject matter of the cause of action. 7 C.J.S. Attorney and Client § 80. An attorney cannot, without express authority, bind his client to accept such a settlement which surrenders a "substantial right." *Sudekum v. Fasnacht's Estate*, 236 Mo.App. 455, 157 S.W.2d 264 (1942). It clearly appears that defense counsel had no express authority to settle this case. Neither the fact of his employment nor his own representations are sufficient to establish his authority. *Aetna Cas. & Sur. Co. v. Traders Nat. Bank & Trust Co.*, 514 S.W.2d 860, 866[9, 11] (Mo.App. 1974). Since these are the only indicia of authority available, we must conclude that the settlement was unauthorized. Defense counsel's uncontroverted testimony that his clients did not give him authority to settle the case is sufficient to meet defendants'

burden of proving lack of authority. There are no special circumstances presented in this case, such as an emergency requiring settlement by the attorney or ratification by the client, which would make the aforementioned general principles of law inapplicable. Therefore, the settlement agreement was not binding on defendants.

Plaintiff's final point is an allegation of error in giving and reading to the jury M.A.I. 9.02 on damages. That instruction reads as follows:

"You must award defendant such sum as you believe is (was) the difference between the fair market value of defendant's whole property immediately before the taking and the value of defendant's remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken."

■ Plaintiff contends that the use of the word "remaining" in M.A.I. 9.02 is improper in this case because it directs the jury not to consider the fact that defendants can still use their property for farming as they did prior to the "taking" by plaintiff. According to plaintiff, M.A.I. 9.02 should have been modified as provided by the illustration in M.A.I. 35.10, p. 424, to omit the word "remaining." This argument is without merit. The reason for the modification of M.A.I. 9.02 shown in the illustration is to prevent the use of the very argument which plaintiff is employing in this case, that is, that no "taking" results from the granting of an underground easement. The modification proffered by plaintiff is intended for the benefit of the person whose property is being taken because "a jury might not understand that property was 'taken' when defendants still retained possession of the surface." See Committee's Comment to M.A.I. 35.10, p. 425. That a "taking" does result in the present situa-

3. Plaintiff objected to this affidavit and no ruling was ever made. However, the trial court has authority to consider such evidence on a motion. Rule 55.28. In any event, there is other evidence to the same effect.

tion is settled. *Southwestern Bell Telephone Company v. Webb*, 393 S.W.2d 117, 121 (Mo.App.1965). It follows that when something is taken from a whole, something less than the whole is remaining and thus the use of the word "remaining" could not have worked to the prejudice of plaintiff. On the contrary, plaintiff stood to benefit from the use of M.A.I. 9.02 in its original form if it could convince the jury that nothing was taken from defendants. Since the jury was apparently not misled there is no need to interfere with the verdict, particularly not at the behest of the party who stood to benefit. *Wims v. Bi-State Development Agency*, 484 S.W.2d 323, 326 (Mo. Banc 1972).

Upon considering the points raised by plaintiff, we find no error and thus affirm the judgment of the trial court.

Judgment affirmed.

SIMEONE, P. J., and GUNN, J., concur.